THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: SECTION 16(b) LITIGATION | MASTER CASE NO.: 07-1549 |
| | **ISSUER DEFENDANTS' JOINT MOTION TO DISMISS** |
| | **Relating To:** |
| | C07-1567,  C07-1570,  C07-1571, C07-1572,  C07-1573,  C07-1576 C07-1584,  C07-1587,  C07-1588 C07-1589,  C07-1590,  C07-1594 C07-1595,  C07-1597,  C07-1598 C07-1605,  C07-1623,  C07-1624 C07-1629,  C07-1631,  C07-1633, C07-1637,  C07-1652,  C07-1653, C07-1654,  C07-1655,  C07-1666, C07-1667,  C07-1669 |
| | NOTED ON MOTION CALENDAR: OCTOBER 23, 2008 |

**ORAL ARGUMENT REQUESTED**

Issuer Defendants' Joint Motion to Dismiss (Master Case No. 07-1549)

**KATTEN MUCHIN ROSENMAN LLP**
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

# I. INTRODUCTION

Plaintiff, Vanessa Simmonds ("Plaintiff" or "Simmonds"), brings this action pursuant to Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. § 78p(b) (2004) ("Section 16(b)" or "§ 16(b)"), which establishes liability for any profits realized by corporate insiders from "matching transactions" within any period of less than six months  ("short-swing trading").  Between October 2, 2007 and October 12, 2007, Plaintiff filed fifty-five separate lawsuits naming fifty-five distinct companies as nominal defendants ("Issuers") and ten different underwriters as defendants ("Underwriter Defendants").  Each Issuer was involved in a factually distinct initial public offering ("IPO") involving one or more of the Underwriter Defendants.   This motion to dismiss is filed jointly on behalf of thirty (30) of the Issuers ("Moving Issuers"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]  As nominal defendants, the Moving Issuers refrain from weighing in on the merits of the litigation and bring this motion solely to address the legal and procedural deficiencies of the Amended Complaints.[2]

Congress enacted § 16(b) to protect investors and to ensure the integrity of the securities market.  *See Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 594-95 (1973) (noting that the Exchange Act in general and § 16(b) in particular were passed to "insure the maintenance of fair and honest markets") (citing 15 U.S.C. § 78b).  The aim and purpose of § 16(b) is to protect investors, the market, and issuers themselves from abuses by corporate insiders' speculative short-swing trading based on inside information.  *Id.*  Plaintiff, however, attempts to bring a § 16(b) claim based on allegations that the Underwriter Defendants and certain unidentified individuals and entities allegedly formed groups that

---

[1]     A list of all Moving Issuers is attached hereto as Exhibit A.

[2]     Indeed, several courts have considered and granted motions to dismiss filed or joined by nominal defendants based on similar grounds.  *See, e.g.*, *Morrison v. Madison Dearborn Capital Partners III, L.P.*, 389 F. Supp. 2d 596, 602 (D. Del. 2005) (granting defendants' and nominal defendant's motions to dismiss § 16(b) action); *Koock v. The Charter Group, Inc.*, No. 89 CIV. 2549 (RWS), 1989 WL 126064, at *1  (S.D.N.Y. Oct. 13, 1989) (same).

Issuer Defendants' Joint Motion to Dismiss
(Master Case No. 07-1549) - 1

KATTEN MUCHIN ROSENMAN LLP
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

engaged in fraudulent schemes to manipulate the price of the Issuers' securities through secret agreements – conduct that is more appropriately addressed under the federal securities laws. Indeed, Plaintiff's attorneys are using a strained interpretation of § 16(b) in an attempt to challenge the same alleged fraudulent scheme that has been litigated in the *In re Initial Public Offering Securities Litigation* ("IPO Litigation") for the past seven years. Moreover, Plaintiff's theory of liability could compromise corporations' access to capital markets because it imposes additional requirements on distribution participants beyond those mandated by Congress and the SEC, and subjects IPO participants to the risk of indefinite liability.

Before all of the Issuers are forced to bear the cost and distraction of discovery for claims championed by Plaintiff's counsel alone, the validity of those claims should be exactingly scrutinized to ensure that they fall within the narrow ambit of § 16(b). The prosecution of these claims will involve substantial cost for the Issuers in terms of attorneys' fees and potential discovery-related expenses, and will require the Issuers' officers, directors and employees to devote significant attention to this matter. Although the Issuers recognize that any damages will be recoverable by them, they also believe that there are substantial questions regarding the propriety of Plaintiff's claims, including but not limited to whether Plaintiff has standing and whether the claims are timely, and the Moving Issuers wish to have these issues resolved at the outset before incurring the substantial costs of moving forward with this litigation. Nevertheless, if any of Plaintiff's claims are allowed to proceed, the Moving Issuers reserve their right to assert any and all positions that are in the best interests of their respective shareholders and the Issuer corporations.

The Moving Issuers respectfully request that this Court enter an Order dismissing Plaintiff's Amended Complaints in their entirety, with prejudice, for the following reasons:

***First***, Plaintiff's Amended Complaints should be dismissed pursuant to Rule 12(b)(1) because Plaintiff lacks standing to bring claims on behalf of the Issuers given that her demand

Issuer Defendants' Joint Motion to Dismiss
(Master Case No. 07-1549) - 2

**KATTEN MUCHIN ROSENMAN LLP**
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

1   letters failed to identify the alleged wrongdoers, the alleged wrongdoing, or the dates of the

2   allegedly improper transactions.[3]

3       **Second**, Plaintiff's Amended Complaints should be dismissed pursuant to Rule

4   12(b)(6) because the two-year statute of limitations has expired.

## II. FACTUAL AND PROCEDURAL BACKGROUND

6       In July 2007, Simmonds, an alleged shareholder of each of the fifty-five Issuers, sent

7   so-called demand letters to certain of the Issuers' boards of directors pursuant to § 16(b).

8   (Am. Compl. ¶ 9.)[4]   Each of the Issuers that received such a letter, in turn, independently

9   determined not to take further action.   Subsequently, between October 2, 2007 and October

10  12, 2007, Plaintiff, purportedly on behalf of the Issuers, filed fifty-five separate suits against

11  certain underwriters of the Issuers' IPOs that took place between 1999 and 2001, alleging

12  violations of § 16(b).   (Orig. Compl. ¶¶ 11, 22.)   The Issuers were named as nominal

13  defendants in these actions.   (*Id.* ¶ 5.)   Simmonds' Complaints are based upon factual

14  allegations nearly identical to those set forth in the IPO Litigation, which has been pending in

15  the Southern District of New York since 2001.[5]   *See In re Initial Public Offering Sec. Litig.*,

16  241 F. Supp. 2d 281, 314-21 (S.D.N.Y. 2003).

---

17  [3]     In addition to joining in this Motion to Dismiss, Audible, Inc. and Packeteer, Inc. have each filed a
18  Supplemental Motion to Dismiss on the ground that, even if Plaintiff had standing, she lost it through cash-out
    mergers between Audible, Inc. and AZBC Holdings Inc., and Packeteer, Inc. and Cooper Acquisition, Inc.
19  Additionally, Intersil Corporation never received a demand letter and, therefore, while joining in this Motion to
    Dismiss, it has also filed a Supplemental Motion to Dismiss on the ground that Plaintiff lacks standing to bring a
20  § 16(b) claim specifically against Intersil Corporation.

21  [4]     Plaintiff's allegations are substantially identical in all of her Complaints and Amended Complaints.
    Therefore, unless otherwise indicated, the terms "Original Complaint" and "Amended Complaint" shall refer to
22  Plaintiff's Original and Amended Complaints filed in the Master Case, *Vanessa Simmonds v. Credit Suisse
    Securities (USA) LLC, J.P. Morgan Securities Inc., Bank of America Corp. and Robertson Stephens, Inc.
    (Defendants), and Onvia, Inc. (Nominal Defendant)*, Case No. C07-1549 (JLR) [hereinafter "Master Case"].
23  Copies of the Original and Amended Complaints are attached hereto as Exhibits B and C, respectively.

24  [5]     From January 11, 2001 through December 6, 2001, thousands of investors filed class action lawsuits,
    alleging that fifty-five underwriters, 310 issuers, and hundreds of individuals associated with those issuers had
25  purportedly engaged in a sophisticated scheme to defraud the investing public. *See In re Initial Public Offering
    Sec. Litig.*, 227 F.R.D. 65, 71 (S.D.N.Y. 2004).   Each of these suits was transferred to Judge Shira A. Scheindlin
    of the Southern District of New York, who consolidated thousands of cases, resulting in 310 consolidated
    actions.

Issuer Defendants' Joint Motion to Dismiss
(Master Case No. 07-1549) - 3

**KATTEN MUCHIN ROSENMAN LLP**
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

Between February 25, 2008 and February 28, 2008, Plaintiff filed Amended Complaints in these suits, asserting substantially similar claims as those set forth in her Original Complaints, changing only the names of the Underwriter Defendants and adding Robertson Stephens, Inc. in twenty-seven of the fifty-five Amended Complaints.   (Am. Compl. ¶ 5.)   On April 28, 2008, a status conference was held where, among other things, the Court coordinated the cases for pretrial purposes using Case No. 07-1549 as the master docket, and appointed liaison counsel for Plaintiff and the Underwriter Defendants.[6]   (*See* Minute Order (Docket No. 39).)

### III. ARGUMENT

Plaintiff purports to bring her claim pursuant to § 16(b) of the Exchange Act. 15 U.S.C. § 78p(b).  Section 16(b) provides:

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer . . . within any period of less than six months . . . shall inure to and be recoverable by the issuer. . . . This subsection shall not be construed to cover . . . any transaction or transactions which the [Securities and Exchange] Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.

*Id.*   The purpose of § 16(b) is to protect investors, the market, and issuers themselves from abuses by corporate insiders' speculative short-swing trading based on inside information. *See Kern*, 411 U.S. at 594-95.   The Supreme Court has stressed that because § 16(b) applies harshly to hold statutorily defined insiders strictly liable for short-swing profits, courts must "endeavor[] to implement congressional objectives without extending the reach of the statute beyond its intended limits."  *Id.*   Thus, "the prevailing view is to apply the statute **only** when its application would serve its goals."[7]  *Id.* at 595.  *See also Foremost-McKesson, Inc. v.*

---

[6]     Upon the request of the Court, David H. Kistenbroker informed the Court that both he and Joni S. Jacobsen would act as liaison counsel for the Issuer Defendants.   (May 15, 2008 Letter from David H. Kistenbroker (Docket No. 40).)

[7]     All emphasis added unless otherwise noted.

**KATTEN MUCHIN ROSENMAN LLP**
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

1   *Provident Sec. Co.*, 432 U.S. 232, 244, 252 (1976) ("[T]he congressional purpose [of § 16(b)]

2   does not require resolving every ambiguity in favor of liability under § 16(b)."); *Levner v.*

3   *Saud*, 903 F. Supp. 452, 461 (S.D.N.Y. 1994) (citing *Reliance Elec. Co. v. Emerson Elec. Co.*,

4   404 U.S. 418, 422 (1972)) ("[T]he Supreme Court has stressed a narrow approach to the

5   statutory construction of § 16(b)."). Section 16(b) "was not intended to remedy all wrongs"

6   and "is simply not an antidote to all the ills that may plague the securities market." *Heublein,*

7   *Inc. v. Gen. Cinema Corp.*, 722 F.2d 29, 31 (2d Cir. 1983).

8       As demonstrated below, the application of § 16(b) here does not serve to protect the

9   integrity of the market from short-swing trading by corporate insiders.  Plaintiff lacks

10  standing to bring § 16(b) claims on behalf of the Issuers because her demand letters are

11  legally inadequate in that they fail to identify ***any*** alleged matching short-swing transactions,

12  the members of the alleged group, or any profit that may be disgorged pursuant to § 16(b).

13  As a separate basis, the Amended Complaints are untimely under the applicable statute of

14  limitations.  The Issuers' shareholders had notice of the complained-of transactions more than

15  two years prior to the filing of the Complaints; therefore, the statute of limitations has long

16  since expired.  Plaintiff's Amended Complaints should accordingly be dismissed.

17  **A.    PLAINTIFF LACKS STANDING TO BRING HER SECTION 16(B) CLAIMS.**

18      As an initial matter, the Amended Complaints should be dismissed pursuant to Rule

19  12(b)(1) of the Federal Rules of Civil Procedure because Plaintiff lacks standing to bring her

20  § 16(b) claims on behalf of the Issuers.[8]  Plaintiff alleges that "all rights to maintain this

21  action have vested fully in [her] pursuant to Section 16(b)" because the Issuers failed to

22  comply with her demand letters within 60 days of her request.  (Am. Compl. ¶¶ 9-11.)[9]

---

23  [8]     Because standing "pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is]
24  properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)."  *White v. Lee*, 227 F.3d
    1214, 1242 (9th Cir. 2000); *accord Kingman Reef Atoll Invs., L.L.C. v. U.S. Dep't of the Interior*, 195 F. Supp.
25  2d 1178, 1182-83 (D. Hawai'i 2002) (an "attack on Plaintiffs' standing is an attack on the court's subject matter
    jurisdiction").

    [9]     Copies of a representative sample of the demand letters referenced in the Amended Complaints are
    attached hereto as Group Exhibit D.  The Court may review and consider the demand letters in determining

Issuer Defendants' Joint Motion to Dismiss
(Master Case No. 07-1549) - 5

**KATTEN MUCHIN ROSENMAN LLP**
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

1  Plaintiff is mistaken.  Essentially, Plaintiff's demand letters request each Issuer bring a §

2  16(b) action, but fail to identify the short-swing transactions, the members of the alleged

3  group, when the transactions occurred within a twelve-month period, or any profit that may be

4  disgorged pursuant to § 16(b).  Plaintiff's lack of specificity deprived the Issuers of the

5  information necessary to evaluate, investigate, and/or pursue actions for recovery of any

6  alleged profits in violation of § 16(b).  Thus, the demand letters are insufficient to vest

7  Plaintiff with standing to bring these claims.

8      Section 16(b) requires a shareholder to first make a demand on a corporation's board

9  of directors before she is permitted to sue.  *See* 15 U.S.C. § 78p(b) (§ 16(b) suit may only be

10  brought by shareholder "if the issuer shall fail or refuse to bring such suit within sixty days

11  after request").  "Absent such a demand, or a showing that a demand would have been futile,

12  an individual shareholder lacks the capacity under § 16(b) to bring suit."  *Prager v. Sylvestri*,

13  449 F. Supp. 425, 429 (S.D.N.Y. 1978).   For a § 16(b) demand to be effective, however, it

14  must comply with the substantive requirements for demand under the law of an issuer's state

15  of incorporation.  *See Dreiling v. Am. Express Travel Related Servs.*, 351 F. Supp. 2d 1077,

16  1085 (W.D. Wash. 2004) (citing *Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz al Saud*,

17  903 F. Supp. 452, 456 (S.D.N.Y. 1994)), *rev'd on other grounds*, 458 F.3d 942 (2d Cir. 2006)

18  [hereinafter "*American Express*"].   As set forth in the Amended Complaints, each of the

19  Moving Issuers are incorporated in Delaware.  (*See*, *e.g.*, Am. Compl. ¶ 6.)[10]

20      A demand under Delaware law must, "at a minimum, . . . identify the alleged

21  wrongdoer, describe the factual basis of the wrongful acts and the harm caused to the

---

23  whether to dismiss pursuant to Rule 12(b)(1).  *See e.g.*, *McCarthy v. U.S.*, 850 F.2d 558, 560 (9th Cir. 1988)
24  ("district court is not restricted to the face of the pleadings, but may review any evidence . . . to resolve factual
   disputes concerning the existence of jurisdiction"); *Friends of Panamint Valley v. Kempthorne*, 499 F. Supp. 2d
   1165, 1171 (E.D. Cal. 2007) (same).

25  [10]      "[F]ederal courts have held that only the issuing corporation . . . has standing to object to any deficiency
   in, or even the total absence of, a plaintiff-shareholder's demand on directors."  *See*, *e.g.*, *Am. Express*, 351 F.
   Supp. 2d at 1084.

Issuer Defendants' Joint Motion to Dismiss
(Master Case No. 07-1549) - 6

**KATTEN MUCHIN ROSENMAN LLP**
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

corporation, and request remedial relief." *Id.* (citing *Levner*, 903 F. Supp. at 456).[11] "The requirement that a shareholder make a demand on the directors of a corporation prior to suing derivatively serves to prevent shareholders and the courts from interfering in matters normally within the province of the corporation's management." *Colan v. Monumental Corp.*, 524 F. Supp. 1023, 1027 (N.D. Ill. 1981). Although Rule 23.1 does not technically apply in the § 16(b) context, the court in *Colan* explained that the demand requirements under Rule 23.1 and § 16(b) serve the same purposes. Specifically, both demand requirements

> allow[] a corporation to activate intracorporate remedies to address shareholder complaints prior to resorting to judicial intervention. The dissident shareholder is provided with an opportunity to achieve his goal without incurring the expense of litigation; the directors of the corporation are allowed to occupy their status as managers of the corporation's affairs; the corporation is left to clean its own house, free from judicial entanglements; and the courts are relieved of the burden of prematurely resolving intracorporate disputes.

*Id.* at 1027-28;[12] *see also Henss v. Schnieder*, 132 F. Supp. 60, 62 (S.D.N.Y. 1955) ("The sixty day [demand] provision was enacted for the benefit of the corporation and to afford it a reasonable opportunity to assert and prosecute its claim in its own name for the recovery of profits from the insider."). Where a shareholder's demand fails to adequately describe the facts on which it is based, however, the preceding policies are frustrated. As one court explained:

> [T]o require a board to investigate claims asserted ambiguously in an equivocal communication would not be an efficient use of corporate resources, because the board would lack the information necessary to make a good faith inquiry. Therefore, an ambiguous communication (i.e., one which does not clearly and specifically embody the [elements required by Delaware law]) ought not to be considered a demand within the meaning of Rule 23.1.

*Yaw v. Talley*, Civ. A. No. 12882, 1994 WL 89019, at *8 (Del. Ch. Mar. 2, 1994).

---

[11]    Although the Court in *American Express* ultimately held that the demand letter was adequate, in doing so it explicitly recognized that a § 16(b) demand letter must provide certain information to be considered effective under Delaware law. *See Am. Express*, 351 F. Supp. 2d at 1085.

[12]    Internal citations are omitted unless otherwise noted.

Issuer Defendants' Joint Motion to Dismiss
(Master Case No. 07-1549) - 7

**KATTEN MUCHIN ROSENMAN LLP**
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

1    Thus, in order for Plaintiff to obtain standing to sue pursuant to § 16(b), her demand

2    letters must comply with the substantive demand requirements under the Issuer's state of

3    incorporation, here Delaware, which requires the letters "at a minimum, . . . identify the

4    alleged wrongdoer, describe the factual basis of the wrongful acts and the harm caused to the

5    corporation, and request remedial relief."  *Am. Express*, 351 F. Supp. 2d at 1085.  Plaintiff

6    fails to meet her burden of demonstrating that the so-called demand letters comply with

7    Delaware law.[13]  Accordingly, Plaintiff lacks standing to maintain these actions and the

8    Amended Complaints must be dismissed pursuant to Rule 12(b)(1).[14]

9    First, the majority of the demand letters do not specifically name *any* entity or

10   individual, and, therefore necessarily fail to identify a single statutorily defined "insider" or

11   member of the alleged "group" pursuant to § 13(d) of the Exchange Act, and Rule 13d-5

12   thereunder.  For example, in the demand letter referenced in the Amended Complaint,

13   Plaintiff demands "that the board of directors prosecute a claim against the Company's IPO

14   underwriters, in addition to certain of its officers, directors and principal shareholders, as

15   identified in the IPO prospectus. . . ."[15]  Even in those few demand letters where Plaintiff

---

16   [13]    "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of
17   subject matter jurisdiction."  *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996); *accord Friends*, 499 F.
     Supp. 2d at 1171 ("A federal court is presumed to lack jurisdiction . . . unless the contrary affirmatively
     appears").

18   [14]    In the alternative to dismissal pursuant to Rule 12(b)(1), the Amended Complaints should be dismissed
19   pursuant to Rule 12(b)(6) because Plaintiff has failed to adequately allege in her Complaints that she made
     demands on the Issuers that complied with the substantive demand requirements under the state law of
20   incorporation.  Rather, Plaintiff simply alleges that "[b]y letter dated July 31, 2007, which was faxed and mailed
     to [the Issuers'] board of directors on that date, Simmonds made a 60-day demand on [the Issuers] pursuant to
21   Rule 16(b)."  (Am. Compl. ¶ 9.)  Moreover, Plaintiff's allegations that her demands were adequate fly in the face
     of the demand letters referenced in the Amended Complaints.  (*See* Group Exhibit D.)  Thus, the allegations of
22   the Amended Complaints need not be accepted as true for purposes of this Motion to Dismiss.  *See Steckman v.
     Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (on 12(b)(6) motions to dismiss, courts "are not
23   required to accept as true conclusory allegations which are contradicted by documents referred to in the
     complaint").  This Court may properly consider the demand letters under Rule 12(b)(6), because the letters are
24   referenced in and central to the Amended Complaints.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)
     ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the
25   document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the
     copy attached to the 12(b)(6) motion.").

     [15]    A copy of the demand letter referenced in the Master Amended Complaint is attached hereto as Exhibit
     E.

---

Issuer Defendants' Joint Motion to Dismiss

(Master Case No. 07-1549) - 8

**KATTEN MUCHIN ROSENMAN LLP**
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

1    identifies one or more of the IPO underwriters, Plaintiff vaguely describes the remaining

2    alleged members of the § 13(d) group as "other IPO underwriters and directors, key officers

3    and certain shareholders of the Company."  (*See, e.g.*, July 10, 2007 letter from J. Thomas to

4    the Board of Directors of Sonus Networks, Inc. attached hereto as part of Group Exhibit D.)

5    Because each of the IPOs involved multiple underwriters and each Issuer's IPO prospectus

6    listed multiple directors, officers, and shareholders, the complete lack of specificity in

7    Plaintiff's demand letters deprived the Issuers of the information necessary to evaluate,

8    investigate, and/or pursue actions for recovery of alleged profits in violation of § 16(b).[16]

9           Plaintiff's demands stand in stark contrast to the demand at issue in American

10   Express.   There, American Express Travel Related Services ("TRS"), a subsidiary of

11   American Express Company, argued that the demand was insufficient because it identified

12   American Express Company, and not TRS, as the alleged wrongdoer.  *Am. Express*, 351 F.

13   Supp. 2d at 1085.   Given that the demand letter explicitly alleged that American Express

14   Company, "directly or through its subsidiaries," sold stock during the relevant period, the

15   court rejected TRS's argument.  *Id.*   Indeed, the demand letter in that case specifically

16   identified the TRS executive officer who was allegedly deputized by American Express

17   Company to represent its interests on the issuer's board of directors, and specifically

18   identified the merger transaction through which TRS acquired the issuer stock plaintiff

19   alleged was traded for short-swing profits.  *Id.* at 1079-80, 1085 (citing to the demand letter

20   plaintiff attached as Exhibit A to his complaint).   Thus, whereas in *American Express* the

21   demand letter specifically referred to a company owned by the recipient of the letter and

---

22   [16]     For example, many of the Moving Issuers' IPO prospectuses list more than ten different underwriters,

23   including but not limited to those for: Akamai Technologies, Inc. (12); Ariba, Inc. (13); Capstone Turbine Corp.
     (11); Intersil Corporation (16); Onvia, Inc. (13); Red Hat, Inc. (22); Sonus Networks, Inc. (11); and Sycamore

24   Networks, Inc. (17).  A chart listing the number of underwriters, officers and directors identified in each Moving
     Issuer's final prospectus is attached hereto as Exhibit F.  Similarly, a cursory examination of the IPO prospectus

25   referenced in the Master Amended Complaint makes clear that the individual officers and directors identified
     therein number in double digits.  (*See, e.g.*, Onvia, Inc. Mar. 1, 2000 Form 424B4, at 45, 59-60, 66, relevant
     portions of which are attached hereto as Exhibit G (identifying 17 directors and officers, 31 shareholders); *see
     also* Exhibit F).)

Issuer Defendants' Joint Motion to Dismiss
(Master Case No. 07-1549) - 9

KATTEN MUCHIN ROSENMAN LLP
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

provided ample information to specifically identify that company, in contrast, Plaintiff's demand letters vaguely refer to third-party IPO underwriters and shareholders, along with unidentified officers and directors, who allegedly "coordinated their efforts" and thus constituted a group for purposes of § 13(d).   Given the multiplicity of underwriters, shareholders, officers, and directors, Plaintiff's failure to identify the members of the alleged group prevented the Issuers from evaluating Plaintiff's bald and unsubstantiated assertions that the unspecified entities and individuals "constituted a group pursuant to Exchange Act § 13(d), and Rule 13d-5 thereunder."   (*See* Group Exhibit D and Exhibit E.)  *See also Henss*, 132 F. Supp. at 62.  Accordingly, the purported demand letters do not meet the requirements of Delaware law.[17]

Second, Plaintiff's demand letters are deficient because they fail to describe the factual basis of the wrongful acts.  *Cf. Am. Express*, 351 F. Supp. 2d at 1085.   Plaintiff does not describe when or how the unidentified group members "coordinated their efforts for the purpose of acquiring, holding, and/or disposing of securities of the Company," but instead relies on conclusory allegations.   (*See* Exhibit E; *see also* Group Exhibit D.)   Similarly, Plaintiff does not specify which members of the alleged group acquired stock, held stock, disposed of stock, or the timing of such transactions.   Moreover, unlike in *American Express* where the demand letter identified a specific six-month period in which the stock transactions occurred, Plaintiff's demand letters only notified the Issuers that the alleged transactions occurred "within periods of less than six months" sometime during the course of a year.   (*Id.*) For instance, the demand letter referenced in the Amended Complaint, which is representative of all of Plaintiff's demand letters, states that "[t]he Underwriters and other members of the

---

[17]      Similarly, although Plaintiff's entire case rests on a § 13(d) group theory of beneficial ownership, as with her demand letters, her Amended Complaints fail to identify the group members or establish that each member was a beneficial owner of Issuers' securities **before** the group was formed.  *See Foremost-McKesson*, 423 U.S. at 250 (dismissing § 16(b) claim where investors did not own more than ten percent of issuer's securities prior to the purchase portion of alleged transaction); *Global Intellicom v. Thomson Kernaghan & Co.*, No. 99CIV342, 1999 WL 544708, at *14 (S.D.N.Y. July 27, 1999) (specifically identifying all members of the alleged group).

KATTEN MUCHIN ROSENMAN LLP
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

group profited from the purchase and sale of Company shares within periods of less than six months during the Relevant Period," defined as March 2, 2000 through March 1, 2001.  (*See* Exhibit E.)  Plaintiff's failure to plead approximate dates of the alleged matching transactions is fatal to the effectiveness of her demand letters.  *Cf. Donoghue v. Golden State Bancorp Inc.*, No. 02 Civ. 2404 (TPG), 2003 WL 22251338, at *1 (S.D.N.Y. Sept. 30, 2003) (dismissing § 16(b) claims where plaintiff alleged matching transactions occurred "within periods of less than six months of each other" without reference to approximate dates). Without such information, the Issuers lacked the facts necessary to investigate Plaintiff's allegations and determine whether it would be in their best interests to pursue the alleged § 16(b) claims.[18]

Finally, nowhere in the demand letters does Plaintiff mention – let alone describe – the alleged short-swing "profit" resulting from the (unspecified) transactions engaged in by (unspecified) parties at (unspecified) times.[19]  Section 16(b) only requires an insider defendant to "disgorge 'any profit realized by him' from short swing transactions."  *Roth v. Jennings*, 489 F.3d 499, 517 (2d Cir. 2007); *Whittaker v. Whittaker Corp.*, 639 F.2d 516, 523-27 (9th Cir. 1981).  Mere expectation or opportunity of profits is not enough.  *See Heli-Coil Corp. v. Webster*, 352 F.2d 156, 167-68 & n.14 (3d Cir. 1965) (holding that in order to constitute "profit realized by" an insider under § 16(b), the pecuniary gain need not be "cash in hand" but must be more than a mere hope or anticipation of gain).  Before the Issuers are forced to spend considerable time and money in the discovery process, Plaintiff should be required to identify the short-swing trading profits she seeks to compel the Underwriter Defendants to disgorge.

---

[18]    Plaintiff's Amended Complaints similarly fail to plead the approximate dates of the six-month short-swing period giving rise to liability.  (*See* Am. Compl. ¶¶ 19-21.)

[19]    Indeed, in her Amended Complaints, Plaintiff makes general conclusory allegations that the Underwriter Defendants "shar[ed] in the profits of customers," and hoped to receive "new or additional investment banking business opportunities" and "future investment banking business" – none of which can be disgorged under § 16(b).  (Am. Compl. at ¶ 20.)  *See also Roth v. Jennings*, 489 F.3d 499, 517 (2d Cir. 2007) (only profits from short-swing tranactions may be disgrorged under § 16(b)).

**KATTEN MUCHIN ROSENMAN LLP**
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

1    Essentially, the demand letters request the Issuers to recover unknown profits resulting
2    from unspecified stock transactions effectuated through the "coordinated efforts" of
3    unidentified wrongdoers, occurring sometime during a twelve-month period, that may or may
4    not have resulted in short-swing profits.  Because Plaintiff failed to make adequate demands
5    on the Issuers, "all rights to maintain this action" have not vested in Plaintiff.  Thus, Plaintiff
6    lacks standing to bring these actions and the Amended Complaints should be dismissed.

7    **B.**    **PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.**

8    Plaintiff's claims also should be dismissed as untimely.  Under § 16(b), "no suit shall
9    be brought more than two years after the date [the short-swing] profit was realized."   15
10   U.S.C. § 78p(b).   This two-year limitations period starts to run on the date of the last
11   transaction that resulted in the realization of a short-swing profit.  *See Kornfeld v. Eaton*, 327
12   F.2d 263, 265-66 (2d Cir. 1964) (finding that the statute of limitations commences on the date
13   of sale or purchase if that is later); *Sonics Int'l, Inc. v. Johnson*, 387 F. Supp. 741, 743 (N.D.
14   Tex. 1975) (same).   Here, Plaintiff has defined the "Relevant Period" during which the
15   challenged transactions occurred in each case as concluding prior to 2002.  (*See*, *e.g.*, Exhibit
16   C, ¶ 19 (identifying "Relevant Period" as "on or about March 1, 2000 through at least
17   February 25, 2001").)  But these cases were not filed until October 2007 – almost six years
18   after the latest alleged "Relevant Period."  Accordingly, the statute of limitations began to run
19   by at least 2002 and has long since expired.  Plaintiff's claims are, therefore, time-barred.

20   Recognizing that her claims were filed after the expiration of the statute of limitations,
21   Plaintiff attempts to excuse her delay by asserting that the Underwriter Defendants "failed to
22   report the transactions as required under § 16(a) of the Exchange Act, thereby tolling the two-
23   year statute of limitations set forth in § 16(b)."  (Am. Compl. ¶ 21.)  The validity of the
24   Underwriter Defendants' potential exemptions under § 16(a) and the analysis of the statute of
25   limitations as to the Underwriters relative to the reporting requirements under this provision is
     beyond the scope of this motion.  The Court need not reach these issues in any event because

Issuer Defendants' Joint Motion to Dismiss
(Master Case No. 07-1549) - 12

**KATTEN MUCHIN ROSENMAN LLP**
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

1   – even if the doctrine of equitable tolling applied – Plaintiff filed suit more than two years

2   after actual notice of the claim.  *See In re Coca-Cola Enter. S'holders Litig.*, C.A. No. 1927-

3   CC, 2007 WL 3122370, at *6 (Del. Ch. Oct. 17, 2007) ("neither equitable tolling nor any

4   other theory can toll the statute of limitations beyond the point at which the plaintiff had

5   actual knowledge"); *Litzler v. CC Invs., LDC*, 362 F.3d 203, 208 (2d Cir. 2004) (equitable

6   tolling should continue until the company gets actual notice that a person subject to § 16(a)

7   has realized specific short-swing profits).  In *Litzler*, the Second Circuit found that while "the

8   incentives of § 16 are best served if tolling is triggered by noncompliance with the disclosure

9   requirements of § 16(a) through failure to file a Form 4[,] [s]uch tolling should continue ***only***

10  ***until the claimant or (depending on the circumstances) the company gets actual notice*** that

11  a person subject to § 16(a) has realized specific short-swing profits that are worth pursuing."

12  362 F.3d at 208.[20]

13         Plaintiff and other shareholders had ample notice of the alleged conduct underlying

14  these claims well over two years prior to the commencement of this litigation as such conduct

15  was disclosed in the IPO Litigation pleadings, the plethora of press regarding the underlying

16  conduct, and the Issuers' public filings – all public documents of which this Court may take

17  judicial notice.[21]  The very transactions challenged by Plaintiff in this case were first made

---

18  [20]    *Accord Kay v. Scientex Corp.*, 719 F.2d 1009 (9th Cir. 1983) (rejecting the formalistic argument that a §

19  16(b) claim does not accrue until the requisite § 16(a) filings are made, employing reasoning similar to that

20  employed by the *Litzler* court to address the tolling issue).  In *Kay*, an insider brought a claim against an issuer

    seeking a declaratory judgment that he was not required to disgorge profits under § 16(b).  719 F.2d at 1011.

    The issuer attempted to estop the defendant from seeking summary judgment until the requisite § 16(a) filings

21  were made by relying on the court's decision in *Whittaker v. Whittaker Corp.*, 639 F.2d 516 (9th Cir. 1981),

    which held that notice to the corporation was not sufficient to toll the statute of limitations because it did not put

22  the shareholders on notice of the alleged misconduct.  *Id.* at 1014-15 (citing *Whittaker*, 639 F.2d at 528-29).  The

    Ninth Circuit rejected the argument, finding that because the issuer had sufficient information available to it

23  regarding the timing of the insider's transactions and whether such transactions were in violation of § 16(b), the

    insider could not be estopped from seeking summary judgment, despite his failure to file the Form 4s required by

24  § 16(a).  *Id.* at 1015 (finding issuer had "failed to show that it is ignorant of the facts which it is claimed [insider]

    has a duty to reveal, and [therefore] its estoppel claim must fail").

25  [21]    A district court may take judicial notice of the contents of relevant public disclosure documents

    required to be and actually filed with the SEC as facts capable of accurate and ready determination.  *See Yuen v.*

    *U.S. Stock Transfer Co.*, 966 F. Supp. 944, 945 n.1 (C.D. Cal. 1997) ("A district court may take judicial notice of

    the contents of relevant public disclosure documents required to be filed with the SEC as facts 'capable of

---

Issuer Defendants' Joint Motion to Dismiss

(Master Case No. 07-1549) - 13

**KATTEN MUCHIN ROSENMAN LLP**
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

1   public during 2001, when the IPO Litigation was commenced, and were further disclosed as

2   the IPO Litigation proceeded through the federal court system.[22]  *See, e.g.*, *Tenney v. Credit*

3   *Suisse First Boston Corp., Inc.*, Nos. 05-3430-CV, 05-4759-CV, 05-4760-CV, 2006 WL

4   1423785 (2d Cir. May 19, 2006), *cert. denied*, *Liu v. Credit Suisse First Boston Corp, Inc.*,

5   127 S.Ct. 733 (2006).   Plaintiff relies upon the same alleged factual schemes as the

6   shareholder plaintiffs in the IPO Litigation relied, namely the alleged manipulation of the

7   Issuers' stock following their IPOs through under-pricing stock and requiring Underwriter

8   Defendants' customers to purchase additional shares in an attempt to inflate the aftermarket

9   share price.  *See Initial Public Offering*, 241 F. Supp. 2d at 314-21.  Furthermore, the IPO

10  Litigation and the alleged improprieties asserted therein were repeatedly disclosed by the

11  Issuers in their respective filings with the SEC as early as May 2001.[23]  In addition, the facts

12  upon which the IPO Litigation – and the § 16(b) cases – are based were widely-reported in

13  nationally-circulated publications including *The Wall Street Journal* and *The New York Times*

14  starting as early as December 2000.[24]  *See Id.*

15

16  accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'")
    (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).  The publication of articles related to

17  the facts underlying the case and the IPO Litigation also is appropriate for judicial notice.  *See Ritter v. Hughes*
    *Aircraft Co.*, 58 F.3d 454, 458-59 (9th Cir. 1995) (taking judicial notice of newspaper article); *U.S. ex. Rel.*

18  *Marchese v. Cell Therapeutics, Inc.*, No. C06-168MJP, 2007 WL 2572347, at *2 (W.D. Wash. Sept. 6, 2007)
    (taking judicial notice of statement in newspaper article in ruling on Rule 12(b)(6) motion).  Courts also may

19  take judicial notice of another court's opinion.  *See also Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th
    Cir. 2001) (holding that a court may "take[] judicial notice of another court's opinion" and noting that the district

20  court could have taken judicial notice of the existence of a pleading in another hearing).

    [22]     The IPOs of fifty-four of the fifty-five Issuers named as a nominal defendants in these cases were also

21  the subject of the IPO Litigation.  *See Initial Public Offering*, 241 F.Supp.2d at 416-21 app. 1 (listing the case
    names for all issuers named in the IPO Litigation).  Accelerated Networks, Inc. and VA Linux Systems, Inc. are

22  the predecessors-in-interest to Occam Networks, Inc. and Sourceforge Inc., respectively, which were named as
    nominal defendants in these cases.  Aspect Medical Systems, Inc. was never named as a defendant in the IPO

23  Litigation.  *See Id.* at 139-40 app. 5A.

24  [23]     A chart identifying the date of the first public disclosure of the IPO Litigation by certain Moving Issuers
    is attached hereto as Exhibit H.

25  [24]     *See* Susan Pulliam & Randall Smith, *Trying to Avoid the Flippers*, WALL ST. J., Dec. 6, 2000, at A.1;
    Susan Pulliam & Randall Smith, *U.S. Probes Inflated Commissions for Hot IPOs*, WALL ST. J., Dec. 7, 2000 at
    C.1; Patrick McGeehan, *Hedge Fund Managers Said to Talk to Grand Jury*, N.Y. TIMES, May 11, 2001, at C1.
    Copies of these articles are attached hereto as Group Exhibit I.

KATTEN MUCHIN ROSENMAN LLP
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

These publicly-available facts establish that the Issuers' shareholders – and the public in general – were on notice of the complained-of transactions by at least 2002.   Indeed, the IPO Litigation was brought *by shareholders of the Issuers* in or about 2000 and 2001, and accordingly, it cannot be denied that the Issuers' shareholders were on notice of the alleged conduct at issue here as of the date the IPO Litigation complaints were filed.  Thus, Plaintiff's contention that the statute of limitations should be tolled because the Underwriters Defendants allegedly failed to report the transactions is irrelevant.   Any tolling ceased because the Issuers' shareholders, including Plaintiff, had notice of the alleged conduct more than two years before this litigation commenced.  Thus, the statute of limitations has long since expired and Plaintiff's suits are, therefore, time-barred.

This is not a situation where notice was provided solely to the corporation, as in *Whittaker v. Whittaker Corp.*, 639 F.2d 516 (9th Cir. 1981).  In *Whittaker*, the Ninth Circuit held the limitations period should be tolled because notice *to the corporation* of the potential basis for a § 16(b) claim did not suffice to put *shareholders* on notice of the alleged misconduct.  639 F.2d at 528.  The court reasoned that enforcement of § 16(b) depends in large part on the scrutiny of outside shareholders and their prosecution of such claims on behalf of the corporation, and thus, Congressional intent would best be effected by ensuring that the shareholders received notice of insider transactions.  *See id.*  Notably, the Ninth Circuit based its decision, in part, on § 16(b)'s purpose to provide notice to shareholders in order to give them the opportunity to sue on behalf of the corporation.  *Id.* at 529.  As demonstrated above, in the present case, such notice was widely and repeatedly given to all shareholders of each of the Issuers, as well as the public in general.[25]  Thus, in contrast to the

---

[25]     The Ninth Circuit in *Whittaker* was not faced with a situation where, as here, a plaintiff sought to expand the scope of § 16(b) liability beyond its clearly demarked boundaries and where the application of the equitable tolling doctrine was unreasonable. *Cf. Whittaker*, 639 F.2d at 528; *see also Litzler*, 362 F.3d at 208. Indeed, the *Litzler* court specifically cautioned that allowing the statute of limitations to be tolled solely because a defendant failed to file § 16(a) reports would result in indefinite liability, "affect[ing] long-settled transactions [that] might hang forever over honest persons." *Id.* at 208 n.5.  Thus, the court advocated limiting the application of equitable tolling based on the failure to file § 16(a) reports to circumstances where the failure to file was "unreasonable." *Id.* Plaintiff should not be permitted to purchase the Issuers' stock for the purpose of

---

Issuer Defendants' Joint Motion to Dismiss
(Master Case No. 07-1549) - 15

KATTEN MUCHIN ROSENMAN LLP
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

1   factual situation in *Whittaker*, the case here presents the precise situation the *Litzler* court

2   more recently held should cease any tolling of the limitations period.  362 F.3d at 208 (tolling

3   "should continue only until the claimant or (depending on the circumstances) the company

4   gets actual notice").

5       Accordingly, because the Issuers' shareholders, including Plaintiff, received actual

6   notice of the alleged conduct ***almost six years*** before these suits were filed, the Court should

7   hold that the two-year limitations period began to run as of 2002, and Plaintiff's claims are

8   time-barred.

9                        **IV.   CONCLUSION**

10      For the foregoing reasons, the Moving Issuers respectfully request that this Court enter

11  an order granting their Joint Motion to Dismiss Plaintiff's Amended Complaints, with

12  prejudice, and granting any other relief this Court deems just and appropriate.

13  DATED: July 25, 2008.                 Respectfully Submitted,

14

15                                        **KATTEN MUCHIN ROSENMAN LLP**

16                                        By:    /s/ Joni S. Jacobsen
                                          David H. Kistenbroker, IL Bar No. 3127302
17                                        Joni S. Jacobsen, IL Bar No. 6243165
                                          525 West Monroe, Suite 1900
18                                        Chicago, Illinois 60661
                                          Telephone: 312.902.5200
19                                        Email: david.kistenbroker@kattenlaw.com
                                                 joni.jacobsen@kattenlaw.com

20                                        **COZEN O'CONNOR**

21                                        Thomas M. Jones, WSBA No. 13141
                                          Benjamin J. Stone, WSBA No. 33436
22                                        1201 Third Avenue, Suite 5200
                                          Seattle, Washington 98101
23                                        Telephone: 206.340.1000
                                          Email: tjones@cozen.com

24

25  asserting a strained interpretation of § 16(b) – seven years after the challenged transactions occurred and years
    after the limitations period expired.  Under Plaintiff's equitable tolling theory, the Issuers could be faced with the
    costs of investigating and participating in costly and time-consuming discovery many years after the subject
    transactions, without any reasonable assurance that recovery is possible.  As recognized by the *Litzler* court, such
    a result is anything but reasonable.

Issuer Defendants' Joint Motion to Dismiss
(Master Case No. 07-1549) - 16

**KATTEN MUCHIN ROSENMAN LLP**
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

bstone@cozen.com

*Attorneys for Akamai Technologies, Inc., Ariba, Inc., AsiaInfo Holdings, Inc., Aspect Medical Systems, Audible, Inc., Avici Systems, Inc., Capstone Turbine Corporation, Digimarc Corporation, Internap Networks Service Corporation, Intersil Corporation, Martha Stewart Living Omnimedia, Inc., NaviSite Inc., Occam Networks, Inc., Onvia, Inc., Oplink Communication, Inc., Packeteer Inc., Perot Systems Corporation, Priceline.com, Inc., RedHat, Inc., Saba Software, Inc., Selectica, Inc., Silicon Laboratories, Inc., Sonus Networks, Inc., Sycamore Networks, Inc., TheStreet.Com, Inc., Vignette Corporation*

**HELLER EHRMAN LLP**

By:     /s/ Joshua B. Selig
Joshua B. Selig, WSBA No. 39628
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone: 206.389.6109
E-mail:joshua.selig@hellerehrman.com

**HELLER EHRMAN LLP**
Michael L. Charlson, CSB No. 122125
275 Middlefield Road
Menlo Park, California 94025
Telephone: 650.324.7000
Email: michael.charlson@hellerehrman.com

*Attorneys for Maxygen, Inc.*

**COLLETTE ERICKSON FARMER & O'NEILL LLP**

By:     /s/ John V. Erickson
John V. Erickson, CSB No. 52356
Andrew H. Pontious, CSB No. 157174
Timothy M. Wong, CSB No. 197024
235 Pine Street, Suite 1300
San Francisco, California 94104
Telephone: 415.788.4646
Email: jerickson@collette.com
              apontious@collette.com
              twong@collette.com

**KATTEN MUCHIN ROSENMAN LLP**
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

**SUMMIT LAW GROUP**

John H. Chun, WSBA No. 24767
Denise L. Ashbaugh, WSBA No. 28512
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104
Telephone: 206.676.7000
Email: johnc@summitlaw.com
      denisea@summitlaw.com

*Attorneys for Cosine Communications, Inc.*

---

**WORKMAN NYDEGGER**

By:    /s/ L. Rex Sears
Sterling A. Brennan, Utah No. 10060
L. Rex Sears, Utah No. 8548
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
Telephone: 801.533.9800
Email: rsears@wnlaw.com
      sbrennan@wnlaw.com

**ATER WYNNE LLP**
Stephen J. Kennedy, WSBA No. 16341
Two Union Square
601 Union Street, Suite 1501
Seattle, Washington 98101
Telephone: 206.623.4711
Email: sjk@aterwynne.com

*Attorneys for Finisar Corporation*

---

**LATHAM & WATKINS LLP**

By:    /s/ John C. Tang
John C. Tang, CSBA No. 212371
Raymond A. Gallenberg, CSB No. 239484
140 Scott Drive
Menlo Park, California 94025
Telephone: 650.328.4600
Email: john.tang@lw.com
      ray.gallenberg@lw.com

**DAVIS WRIGHT TREMAINE LLP**

Steven P. Caplow, WSBA No. 19843
1201 Third Avenue, Suite 2200

**KATTEN MUCHIN ROSENMAN LLP**
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

Seattle, Washington 98101
Telephone: 206.757.8018
Email: stevencaplow@dwt.com

*Attorneys for TiVo Inc.*

KATTEN MUCHIN ROSENMAN LLP
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Michael Berengarten
Ian S. Birk
Jeffrey Coviello
Brendan J. Dowd
Andrew J. Frackman
Fraser L. Hunter, Jr.
David W. Ichel
Thomas M. Jones
David S. Lesser
Robert B. McCaw
Joseph M. McLaughlin
William C. Smart
Benjamin J. Stone
Jeffrey M. Thomas
Jeffrey I. Tilden
Christopher B. Wells
Mark Wilner

and, pursuant to the Court's July 24, 2008 Order and as liaison counsel for Issuers, I sent by electronic mail the foregoing document to the following counsel of record for Issuer Defendants:

Denise L. Ashbaugh, denisea@summitlaw.com
Sterling A. Brennan, sbrennan@wnlaw.com
Steven P. Caplow, stevencaplow@dwt.com
Michael L. Charlson, michael.charlson@hellerehrman.com
John H. Chun, johnc@summitlaw.com
Molly M. Daily, bhellis@stoel.com
Nancy E. Delaney, NDelaney@curtis.com
Barnes H. Ellis, bhellis@stoel.com
John V. Erickson, jerickson@collette.com
Theresa A. Foudy, TFoudy@curtis.com
Raymond A. Gallenberg, ray.gallenberg@lw.com
Stephen J. Kennedy, sjk@aterwynne.com

Memorandum in Support of Issuer Defendants' Motion to Dismiss

KATTEN MUCHIN ROSENMAN LLP
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061

Jay Pomerantz, jpomerantz@fenwick.com
Andrew H. Pontious, apontious@collette.com
Evan L. Schwab, schwab.evan@dorsey.com
L. Rex Sears, rsears@wnlaw.com
Joshua B. Selig, joshua.selig@hellerehrman.com
Emmett C. Stanton, estanton@fenwick.com
John C. Tang, john.tang@lw.com
Christopher S. Walton, cwalton@fenwick.com
Timothy M. Wong, twong@collette.com

and, as liaison counsel for Issuers, I sent by electronic mail the foregoing documents to the

following liaison counsel for Underwriter Defendants:

Andrew B. Clubok, aclubok@kirkland.com
Brant W. Bishop, bbishop@kirkland.com
Robert B. Gilmore, rgilmore@kirkland.com
Ross R. Fulton, rfulton@kirkland.com.

**KATTEN MUCHIN ROSENMAN LLP**

By:      /s/ Joni S. Jacobsen
Joni S. Jacobsen, IL Bar No. 6243165
525 West Monroe, Suite 1900
Chicago, Illinois 60661
Telephone: 312.902.5200
Email: joni.jacobsen@kattenlaw.com

Memorandum in Support of Issuer Defendants' Motion to Dismiss

**KATTEN MUCHIN ROSENMAN LLP**
525 WEST MONROE STREET
SUITE 1900
CHICAGO, ILLINOIS 60661
PHONE: 312.902.5200
FACSIMILE: 312.902.1061